# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEBORAH A. HAMPTON, Administratrix of the Estate of Ronald E. Hampton, *deceased*,<br><br>        Plaintiff,<br><br>   v.<br><br>UNITED STATES OF AMERICA,<br><br>        Defendant. | Civil Action No.: 3:21-cv-198<br><br>Civil Action – Medical Professional Liability Action<br><br><br><br>**COMPLAINT** |

Filed on Behalf of the Plaintiff,
Deborah Hampton, Administratrix


Counsel of Record for this Party:

Matthew J. Scanlon, Esq.
PA I.D. #307209

Timothy Grant Wojton, Esq.
PA I.D. #307894

Scanlon & Wojton, LLC
304 Ross Street, Suite 510
Pittsburgh, PA 15219
412-918-1241
412-235-7275 (fax)

# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEBORAH A. HAMPTON, Administratrix of the Estate of Ronald E. Hampton, Deceased, | Civil Action No.: 3:05-mc-2025 |
| | Civil Action – Medical Professional Liability Action |
| Plaintiff, | |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

## **COMPLAINT**

AND NOW, comes the Plaintiff, Deborah A. Hampton, Executrix of the Estate of Ronald E. Hampton, Deceased, by and through her counsel, Timothy Grant Wojton, Esq. and Scanlon & Wojton, LLC, and files the within Complaint, and in support thereof, avers as follows:

## **PARTIES**

1. Deborah A. Hampton, Plaintiff herein, is the Executrix of the Estate of Ronald E. Hampton, deceased ("Decedent"), having been so appointed by the Register of Wills of Centre County in the Commonwealth of Pennsylvania, on October 5, 2021. *See* copy of the Certificate of Grant of Letters of Administration attached hereto at Exhibit "A".

2. Decedent Ronald E. Hampton died on June 2, 2018.

3. Defendant United States of America (hereinafter referred to as the "United States") maintains the United States Department of Veterans Affairs and its divisions and subdivisions.

4. The Unites States Department of Veterans Affairs was established by Congress, in part, to administer a government healthcare system for military veterans of the United States of America, and includes within its purview administration of the VA Healthcare System.

5. The VA Healthcare System provides health care to veterans including medical, nursing, surgical and rehabilitation care for eligible veterans who served in the Armed Forces of the United States.

6. The Altoona VA Healthcare System is a division of the U.S. Department of Veterans Affairs, and provides healthcare to veterans at facilities, including but not limited to the James E. Van Zandt VA Medical Center, situated at 2907 Pleasant Valley Blvd., Altoona, PA 16602, and the State College VA Clinic, situated at 2581 Clyde Avenue, State College, PA 16801.

7. Plaintiff is asserting a medical negligence claim against Defendant United States of America.

8. At all times relevant hereto, Defendant United States was acting by and through its duly authorized agents, servants and/or employees, ostensible or otherwise, who were then and there acting within the course and scope of their employment or agency, including but not limited to Keith J. Parowski, D.O., Jennifer L. Delozier, M.D., and John Bertolino, M.D.

9. The James E. Van Zandt VA Medical Center, (hereinafter referred to as "Van Zandt" or the "Van Zandt Center"), is the main campus in the Altoona VA Healthcare System, and it operates as a healthcare provider, offering primary care and specialty health services, including cardiology, neurology, orthopedics, pulmonary medicine and internal medicine.

10. The State College VA Clinic (hereinafter referred to the "State College Clinic"), is a facility operating within the Altoona VA Healthcare System, and it operates as a healthcare provider, offering primary medical care.

11. At all times relevant hereto, the Van Zandt Center and State College Clinic were organized and established, and operated and conducted business as, a division of the U.S. Department of Veterans Affairs, and indeed, they were owned, controlled, operated and maintained by the U.S. Department of Veterans Affairs.

12. As such, the Van Zandt Center and State College Clinics were organized to provide healthcare utilizing licensed healthcare professionals.

13. At all times material hereto, the medical care providers working within the Van Zandt Center and State College Clinic, including in particular the medical care providers with whom the Decedent visited, consulted or sought treatment, held themselves out as agents, servants or employees of the U.S. Department of Veterans Affairs.

14. By letter dated December 5, 2018, the Plaintiff served the Office of Chief Counsel of the Department of Veterans Affairs in Buffalo, New York an executed Standard Form 95, providing notice to the United States Government of claims on her behalf. *See* copy of the Standard Form 95 submission attached hereto at Exhibit "B".

15. On December 21, 2018, Michael Bartley, a Paralegal Specialist working within the Office of Torts Law Group of the U.S. Dept. of Veterans Affairs in Pittsburgh, PA replied with a letter indicating that the U.S. Department of Veterans Affairs received her tort claim on December 10, 2018.

16. On or about October 4, 2019, prior counsel for the Plaintiff sent a confidential demand package to Lisa Wolfe at the U.S. Department of Veterans Affairs in Pittsburgh, wherein

the Plaintiff provided additional information in support of the Plaintiff's claim, including additional records, photographs and letters written by heirs and family members of the late Ronald E. Hampton.

17. On July 28, 2020, prior counsel for the Plaintiff sent a letter to Lisa Wolfe inquiring into the status of the Plaintiff's claim. In that letter, Plaintiff's counsel recounted the thirteen (13) times that he or his offices called and left voicemails with the U.S. Dept. of Veteran Affairs and the Office of General Counsel between November 22, 2019 and July 2020, none of which garnered a response.

18. On August 13, 2020, Kristen Nelson, Deputy Chief Counsel of the United States Department of Veterans Affairs Office of Regional Counsel sent a letter to prior counsel for the Plaintiff indicating that the Plaintiff's claim was denied.

19. On August 17, 2020, having not yet received or reviewed the denial letter of August 13th, counsel for the Plaintiff sent a follow up letter to Lisa Wolfe, wherein he included a copy of the expert report of cardiologist, Bruce Charash, M.D. *See* copy of the Expert Report attached hereto at Exhibit "C".

20. After finally receiving and reviewing the denial letter of August 13th, the Plaintiff, on September 2, 2020, filed with the Department of Veteran Affairs a formal "appeal" and request for reconsideration of their denial.

21. On October 28, 2020, Laverne Hill, a legal assistant working out of the Office of General Counsel for the Department of Veterans Affairs in Washington, D.C., served a letter upon the Plaintiff indicating receipt of the Plaintiff's request for reconsideration on September 17, 2020.

22. On June 1, 2021, Cynthia Hernandez, Deputy Chief Counsel out of the Office of General Counsel for the Department of Veterans Affairs in Washington, D.C., served a letter upon the Plaintiff denying the Plaintiff's request for reconsideration, effectively denying her claim again. *See* copy of the Denial Letter attached hereto at Exhibit "D".

23. The June 1, 2021 letter from Ms. Hernandez advised the Plaintiff that she has six (6) months from June 1st to file a formal lawsuit in Federal District Court.

## JURISDICTION AND VENUE

24. This action is brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §2671.

25. Over six (6) months have passed since the United States Department of Veterans' Affairs acknowledged receipt of the Plaintiff's original Form-95 submission, and over six (6) months have passed since the Department of Veterans' Affairs acknowledged receipt of the Plaintiff's Request for Reconsideration.

26. By letter dated June 1, 2021, the Defendant United States issued its final and most recent denial of the Plaintiff's claim, establishing a December 1, 2021 deadline to file the within Complaint.

27. Venue is proper within this district under 28 U.S.C. §1402(b) as the acts complained of occurred in the Western District of Pennsylvania.

28. The above-captioned matter is being brought against the United States of America pursuant to 28 U.S.C. §2671, *et seq.* (Federal Tort Claims Act), and 28 U.S.C. §1346(b)(1) for money damages, compensation for personal injuries and death that were caused by the negligence and wrongful acts and omissions of the agents, servants and employees of the United States Government while acting within the course and scope of their offices and employment, under circumstances where the United States, if a private

person, would be liable to the Plaintiff in accord with the laws of the Commonwealth of Pennsylvania.

## FACTUAL NARRATIVE

29. The Decedent had been visiting VA facilities, clinics and physicians for many years leading up to his death, including for regular, primary care visits, physicals and wellness checks.

30. For years, the Decedent presented to both the Van Zandt Center and the State College Clinic with both objective and subjective symptoms consistent with coronary artery disease and high risk of cardiac arrest.

31. For example, the Decedent was well known to the Altoona VA Health System and Defendant United States to have hypertension, hyperlipidemia and a poor BMI (body mass index).

32. The Altoona VA Health System and Defendant United States were also aware that the Decedent had been exposed to Agent Orange during his deployment to Vietnam from April 13, 1970 to December 13, 1971.

33. The Department of Veterans Affairs has definitively determined and acknowledged that Agent Orange exposure is a contributing cause or substantial factor in bringing about ischemic heart disease (including acute, subacute and old myocardial infarction), as well as atherosclerotic cardiovascular disease (including coronary artery disease).

34. As for family history, the Plaintiff believes and therefore avers that the Decedent's father died of cardiac arrest at the age of 61, his mother died of cardiac disease at the age of 76, and the Decedent's brother died of arteriosclerotic heart disease.

35. In addition, the following Lipid Profile chart reveals the following lab values, which are strongly indicative of coronary artery disease:

|         | 10/14/14 | 03/16/15 | 06/14/16 | 02/07/17 | 11/15/17 | 05/01/18 | Ref. Range |
|---------|----------|----------|----------|----------|----------|----------|------------|
| Chol    | 227 (H)  | 212 (H)  | 216 (H)  |          | 229 (H)  | 216 (H)  | <= 200     |
| HDL     |          |          |          |          |          | 48       | 40-60      |
| LDL     | 160 (H)  | 140 (H)  | 148 (H)  |          | 157 (H)  | 151 (H)  | 5 - 100    |
| DIR LDL |          |          |          | 169.3 (H)|          |          | <= 100     |

36. The Reference Range (Ref. Range) on the right-most column indicates what a reasonably healthy individual's lab numbers "should" be, ideally.

37. The numbers depicted above are almost all well above or outside of the Reference Range, with the letter "H" standing for "high".

38. Thus, from these laboratory values alone, the Defendant and its agents, servants and employees knew or should have known that the Decedent presented with active coronary artery disease or, at the very least, a significantly heightened risk of developing coronary artery disease in the very near future.

39. On September 19, 2014, the Decedent reported shortness of breath and wheezing. No medication or consult was recommended from a cardiac standpoint.

40. On September 24, 2014, the Decedent called the clinic and reported difficulty sleeping due to breathing issues and requested medication. In response, the medical team recommended that the Decedent submit to diagnostic testing first, which the Decedent did do at the James E. Van Zandt VA Medical Center the very next day.

41. On or around September 25, 2014, Keith J. Parowski, D.O. ordered and reviewed an electrocardiogram (ECG) which was found to be "abnormal," and depicted a sinus

rhythm with "1st degree A-V block with frequent and consecutive premature ventricular complexes."

42. A cardiac enzyme test performed at this time also revealed a markedly elevated CPK level at 281 (with a reference range of 55-170).

43. In May of 2015, just two months after the high 140 LDL value was obtained via bloodwork, the Decedent reported shortness of breath and chest tightness, among other things.

44. Several months later, in August of 2015, the Decedent reported shortness of breath upon exertion – *e.g.*, simply walking the distances five (5) blocks.

45. By April of 2016, the Decedent reported that his shortness of breath had worsened, in that he experienced dyspnea after walking the distance of two (2) blocks, and in August of 2016, the Decedent reported that walking the distance of only one (1) block caused a loss of breath.

46. On October 12, 2016, an X-Ray of the chest revealed, *inter alia*, a "**tortuous atherosclerotic aorta**," which is strongly associated with cardiovascular disease and cardiac arrest, as well as "mild hilar/infrahilar fullness which **may be vascular in nature**."

47. On January 3, 2017, the Decedent presented to VA Urgent Care at the Van Zandt Center complaining of cough, sinus congestion and wheezing.

48. On even date, Dr. Keith J. Parowski ordered a CT Scan of the thorax.

49. The radiology report associated with the January 3, 2017 CT Scan stated, *inter alia*, that "**[c]alcifications are visualized in the coronary artery. This is a marker for possible**

**coronary artery disease**" and, under "Impression," it stated: "coronary artery calcifications **indicative of CAD**."

50. Despite the January 3, 2017 study and the Decedent's personal and family history of hypertension, hyperlipidemia, Agent Orange exposure, abnormal ECG in September of 2014, elevated CPK levels, tortuous atherosclerotic aorta discovered in October of 2016, progressively worsening dyspnea upon exertion and the loss of his own parents to cardiovascular disease, neither Dr. Parowksi nor Dr. Delozier nor any other agent, servant or employee of the Van Zandt Center, State College Clinic or Altoona VA Health System referred the Decedent to cardiology for a consult, screening or further workup.

51. Despite his consistently high cholesterol, neither Dr. Parowksi nor Dr. Delozier nor any other agent, servant or employee of the Van Zandt Center or Altoona VA Health System prescribed or ordered any medications, such as statins, that would serve to reduce or address that issue in a timely manner.

52. Indeed, despite the findings of the October 12, 2016 Chest X-Ray and January 3, 2017 CT Scan, there appeared to be no change in the Decedent's overall medical treatment whatsoever, particularly as it relates to his cardiovascular health.

53. On May 30, 2018, the Decedent was pumping gas when he collapsed, striking his head.

54. A bystander started CPR and by the time emergency medical responders arrived, the Decedent was in a state of V-Fib (Ventricular Fibrillation).

55. The Decedent was subjected to five (5) rounds of defibrillation and multiple rounds of epinephrine and bicarbonate.

56. The Decedent was rushed to Mt. Nittany Medical Center, whereupon he eventually, after further defibrillation, regained spontaneous circulation.

57. He was taken emergently to the cardiac catheterization laboratory, where medical care providers introduced two overlapping drug-eluting stents, a procedure complicated by slow reflow, requiring Integrillin/IC vasodilators.

58. During the procedure, the Decedent was exhibiting rapid breath and was highly agitated. He was moving all extremities, in conscious pain and severe physical and emotional distress.

59. Heart catheterization revealed biventricular filling pressures and post-capillary pulmonary hypertension with preserved cardiac output.

60. The Decedent developed pulmonary hemorrhage and acute renal failure and progressed to suffer metabolic and respiratory acidosis.

61. The Decedent continued to deteriorate until he ultimately died at 2:26 p.m. on June 2, 2018.

62. The Decedent is survived by the Plaintiff, Deborah Hampton, his grieving wife, as well his five (5) children – Jana Franz, Kathrine "Katie" Santsaver, Krista Hampton, Faith Hampton, and Michael Hampton – and several grandchildren.

**COUNT I – Professional Medical Negligence**
*Wrongful Death*

63. The foregoing paragraphs are incorporated herein as though fully set forth below.

64. At all times relevant hereto, the medical and healthcare agents, servants and employees of the Altoona VA Health System and the James E. Van Zandt Medical Center who treated the Plaintiff's Decedent, all of whom were acting within the course and scope of their agency or employment, owed to the Plaintiff's Decedent a duty to act in a manner consistent with the professional standards of care applicable to their respective specialties.

65. At all times material hereto, Keith A. Parwoski, D.O. owed a duty to the Plaintiff's Decedent to exercise the skill and care of a reasonably prudent physician practicing internal medicine.

66. At all times material hereto, Jennifer L. Delozier, M.D. and John Bertolino, M.D. owed a duty to the Plaintiff's Decedent to exercise the skill and care of reasonably prudent physicians practicing family medicine.

67. The Defendant, United States of America, along with the Altoona VA Health System, the James E. Van Zandt Medical Center, the State College Clinic, and their respective agents, ostensible agents, servants and employees, all of whom were acting within the course and scope of their agency or employment, deviated from good and acceptable medical standards, and were negligent in the following particulars:

    a. In failing to request, recommend, prescribe or order a cardiology consult at any time in the five (5) years leading up to the Decedent's death, particularly in light of his history of hypertension, hyperlipidemia, family history, dyspnea on exertion, atherosclerotic aorta, and the alarming January 3, 2017 CT study that revealed evidence of coronary artery disease;

    b. In failing to recommend, order or pursue any cardiovascular follow-up on the results of the October 12, 2016 X-Ray and/or January 3, 2017 CT study, including diagnostic studies designed to screen for coronary artery disease;

    c. In failing to timely prescribe or order statins or any other pharmaceutical drugs to address, treat or lower the Decedent's high cholesterol and hyperlipidemia;

    d. In failing to request, recommend, prescribe or order the following additional studies at any time after September 2014: a Holter monitor, a cardiac CT

angiogram of the heart, one or more additional EKGs or ECGs, a "stress test," a cardiac ultrasound, or a heart catheterization.

e. In failing to timely diagnose the Decedent with coronary artery disease;

f. In failing to timely treat the Decedent's coronary artery disease, including any and all efforts to delay, prevent or stave off a heart attack;

g. In failing to formulate, adopt and/or enforce adequate rules and policies to ensure that the Decedent's coronary artery disease was timely diagnosed and treated;

h. In failing to formulate or implement any medical treatment regimen to arrest, slow and/or reverse the Decedent's coronary artery disease;

i. In failing to ensure and engage in proper communication and coordination between agents, servants, employees, departments and medical disciplines working within the James E. Van Zandt VA Center and Altoona VA Health System, so that Decedent's treating physicians were all on the "same page" as to his overall medical condition and plan of care.

j. In failing to properly document and record the patient's personal and family history in a continuous, comprehensive and conspicuous manner.

68. As a direct and proximate result of the negligence and carelessness described hereinabove, the Decedent suffered a delay in the diagnosis and treatment of his coronary artery disease and died as a consequence thereof.

69. As a further direct and proximate result of the conduct of Defendant United States and its agents, servants and/or employees, Decedent was forced to endure great pain, discomfort, suffering, burden and inconvenience in the days and weeks leading up to his death.

70. As a further direct and proximate result of the conduct of Defendant United States and its agents, servants and/or employees, Decedent suffered a loss of such sums as he would have earned in the future and his earning capacity was destroyed as of the date of his death.

71. During his lifetime, Decedent did not commence any action to recover damages for the injuries which caused his death and no other actions have been filed to recover damages for his wrongful death.

72. Pursuant to 42 Pa.C.S.A. §8301, this claim is being brought for the recovery of injuries and damages.

73. Decedent, was 68 years of age at the time of his death, and left his wife Deborah Hampton as a wrongful death heir, along with five (5) adult children:

   a. Deborah Hampton
      16094 W Avenida Del Sol
      Surprise, AZ 85387

   b. Jana Franz
      16094 W Avenida Del Sol
      Surprise, AZ 85387

   c. Michael Hampton
      1218 S Allen St.
      Apt 12
      State College PA 16801

   d. Katie Sheedy (Santsaver)
      23878 North 161st Ave
      Surprise, AZ 85387

   e. Faith Hampton
      1218 S Allen St
      Apt 12
      State College PA 16801

   f. Krista Hampton
      12602 W Sierra St

El Mirage, AZ 85335

74. By reason of the Decedent's death, said wrongful death heirs have been deprived of the consortium, services, earnings, companionship, society, comfort, and tutelage of Decedent.

75. By reason of the Decedent's death, said wrongful death heirs have suffered and continue to suffer profound emotional and psychological loss.

76. By reason of the Decedent's death, said wrongful death heirs have suffered pecuniary loss, including expenses incurred for Decedent's medical and hospital bills, funeral and burial expenses, and other items, including expenses of the administration of the Decedent's Estate.

WHEREFORE, Plaintiff claims all damages recoverable under the applicable laws of this Commonwealth against the Defendant in a sum in excess of the threshold amount for a board of arbitrators in this jurisdiction, and any and all additional sums deemed lawful and appropriate by this Honorable Court.

## COUNT II – Professional Medical Negligence
*Survival Action*

77. Plaintiff incorporates the foregoing paragraphs by reference and make them part of this Count as though fully set forth herein.

78. Plaintiff brings this action on behalf of the Estate of Ronald E. Hampton, deceased, under and by virtue of the laws of the Commonwealth of Pennsylvania and other applicable statues, including 20 Pa.C.S.A. §3373 and 42 Pa.C.S.A. §8302 to recover all damages of whatsoever nature to which said Estate is entitled by reason of the death of Decedent under the laws governing survival actions.

79. Plaintiff claims on behalf of the Estate the damages suffered by the Estate by reason of the death of Plaintiff Decedent, including the destruction of Decedent's future earnings and income, earning capacity, medical expenses, and the physical and mental pain, suffering, discomfort, burden, inconvenience, embarrassment and loss of the pleasures of life.

WHEREFORE, Plaintiff claims all damages recoverable under the applicable laws of this Commonwealth against Defendant in a sum in excess of the threshold amount for a board of arbitrators in this jurisdiction, and any and all additional sums deemed lawful and appropriate by this Honorable Court.

Respectfully submitted,

/s/ *Timothy Grant Wojton*
Timothy Grant Wojton, Esq.

# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEBORAH A. HAMPTON, Administratrix of the Estate of Ronald E. Hampton, Deceased,<br><br>    Plaintiff,<br><br>  v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Civil Action No.: 3:05-mc-2025<br><br>Civil Action – Medical Professional Liability Action |

## CERTIFICATE OF MERIT AS TO DEFENDANT UNITED STATES OF AMERICA BY AND THROUGH THE ACTS AND OMISSIONS OF ITS AGENTS, OSTENSIBLE AGENTS, SERVANTS AND EMPLOYEES

I, Timothy Grant Wojton, Esq., do hereby certify:

\_\_\_X\_\_\_ an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the Complaint fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm alleged;

AND/OR

_____ the claim that this defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the Complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm alleged;

OR

_____expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.


Date:\_\_11/12/2021_____                 */s/ Timothy Grant Wojton*
                                       Timothy Grant Wojton, Esq.